UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER AVALOS,<br><br>　　　　Petitioner,<br>　vs.<br>A. KANE,<br>　　　　Respondent. | No. C 06-2113 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(Docket No. 12) |

## INTRODUCTION

Petitioner Javier Avalos, a California state prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges a decision by the Board of Prison Terms ("Board") that he is unsuitable for parole. The Court directed respondent to show cause why the cognizable claims should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the parties' respective submissions and the underlying record, the Court concludes petitioner is not entitled to relief based on the claim presented and will DENY the petition.

## BACKGROUND

In 1986, a Los Angeles Superior Court jury convicted petitioner of first-degree murder, see Cal. Pen. Code § 187, and of using a firearm in the commission of a felony, see id. §12022.5. (Ans. Ex. 1 (Judgment 12/31/86)). The trial court sentenced petitioner to a total term of twenty-

1  seven years-to-life.  (Id.)  In May 2003, the Board found petitioner unsuitable for parole, on the
2  ground he "would pose an unreasonable risk of danger to society or a threat to public safety if
3  released."  (Ans. Exh. 2 (Parole Hearing Transcript 5/14/03) at 93.)
4        The following facts of the commitment offense on which the Board relied were taken
5  from the state appellate court decision on petitioner's direct appeal:  Because of a dispute over a
6  woman, petitioner shot the victim, Juan Vasquez, an acquaintance, four times, causing injuries to
7  his head, neck, and abdomen.  After the shooting, petitioner severely beat Vasquez, who later
8  died of his wounds.  (Id. at 20–21, 78, 93–94.)
9        At the parole hearing, petitioner asserted that he did not murder or intentionally shoot
10  Vasquez, and that the gun went off as he and Vasquez struggled for the weapon, after an
11  argument about how women should be treated.  (Id. at 22, 23, 26, 27–28, 32).
12        At the parole hearing, the Board reviewed petitioner's record, including the
13  circumstances of his commitment offense, his criminal history, his behavior in prison, his
14  psychological report, and his parole plans, as well as the opinions of law enforcement.  With
15  respect to the crime itself, the Board found the offense "was carried out" in a manner that was
16  both "especially vicious and insensitive" and "dispassionate and calculated."  (Id. at 93.)  As to
17  petitioner's criminal history, the Board acknowledged that petitioner had no juvenile or adult
18  criminal record other than his conviction for the commitment offense.  The Board also
19  acknowledged that petitioner had completed training programs in information technologies and
20  computer refurbishing, that he had attended some self-help therapy classes, (id. at 55–57), and
21  that his parole plans included offers of places to live and actual job offers, (id. at 68–73).  The
22  Board noted, however, that petitioner had committed multiple serious disciplinary infractions
23  while in prison, which included citations for disobeying orders, "demonstration of frontal
24  assaults," failure to report, and possession of a forged privilege card.  (Id. at 94–95.)
25  Additionally, the Board reviewed an evaluating psychologist's 2002 report, which, although
26  noting petitioner's significant positive progress (id. at 63–64), found petitioner's "violence
27  potential" was "somewhat higher than the average citizen in the community."  (Id. at 65, 95).
28  The Board also considered evidence that the police department and the Los Angeles District

Attorney opposed petitioner's parole. (Id. at 95–96). After a full hearing, during which all of the above evidence was considered, the Board found petitioner unsuitable for parole. (Id. 93.)

In response to the Board's decision, petitioner filed state habeas petitions, later denied, in the California Superior Court, Court of Appeal, and Supreme Court. (Pet. at 6.) In 2006, petitioner filed the instant federal petition, alleging that: (1) the Board failed to review the documentation submitted by petitioner, denied his state statutory eligibility to primary term-fixing, and denied him transfer to his country of origin; (2) the Board's decision is not supported by some evidence, thus violating petitioner's constitutionally protected liberty interest in parole; and (3) the Board has discriminated against petitioner on the basis of his race and country of origin. (Order to Show Cause at 2.)

**DISCUSSION**

**A.    Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d

1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, here the opinion of the Los Angeles Superior Court. (Ans Ex. 3.); See Nunnemaker, 501 U.S. at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

**B.     Petitioner's Claims**

**1.     Due Process**

Petitioner claims the Board violated his due process rights when it failed to review the documentation petitioner submitted, denied his state statutory eligibility to primary term-fixing, and denied him transfer to his country of origin under a United States treaty.[1] (Pet. at 19.)

Petitioner's first allegation is without merit, as petitioner's assertion that the Board failed to review certain documents is not supported by the record. The documentation to which petitioner refers is a brief he compiled from police records and court transcripts, which "represent[s] all the inaccuracies [that] were made in the [state trial and appellate] court[s]." (Ans. Ex. 2 at 21, 22.) At the parole hearing, petitioner averred that he submitted a copy of his brief, or "book," to the Board in 2002. (Id. at 22, 24–25.) When petitioner mentioned the brief at the 2003 hearing, the presiding parole commissioner stated, "I have that brief right here." (Id. at 47.) Based on this record, and without any indication to the contrary, the Court assumes the Board reviewed the brief that was in its possession.

Petitioner's second allegation likewise fails. Whatever right petitioner has to "primary term-fixing," it is a state statutory right and as such is not a cognizable basis for a federal constitutional claim.

Accordingly, petitioner's first two due process claims will be denied.[2]

---

[1] See Inter-American Convention on Serving Criminal Sentences Abroad, Jan. 10, 1995, S. Treaty Doc. No. 104-35 (1995). (Ans. Ex. 6.)

[2] Petitioner's third allegation, which concerns the denials of his requests to return to Mexico, is addressed below in Section 3.

**2.     Sufficiency of the Evidence**

Petitioner claims the Board's decision is not supported by some relevant and reliable evidence and therefore violates his right to due process.[3] (Pet. 24–25.) The Board identified several reasons based on evidence in the record for its decision, including the circumstances of the commitment offense, petitioner's behavior in prison, the information contained in his psychological report, and law enforcement's opposition to parole. (Ans. Ex. 2 at 93–96.)

The Board's denial of parole complies with due process provided that there is "some evidence" to support its decision. As the Supreme Court has explained, a parole board's decision deprives a prisoner of due process if the Board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." See Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454–55 (1985)); see also McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same). Additionally, the evidence underlying the Board's decision must have "some indicia of reliability." See McQuillion, 306 F.3d at 904. Accordingly, if the Board's determination with respect to parole suitability is to satisfy due process, such determination must be supported by some evidence having some indicia of reliability. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

In assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. Pursuant to such regulations, "[t]he panel shall first determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life

---

[3] Petitioner also claims the Board's continued reliance solely on the unchanging factor of the circumstances of the commitment offense can result in a violation of due process. (Pet. at 26.) While petitioner's general proposition is supported by case law, see Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003), petitioner has not shown the Board violated his right to due process, as the Board, in petitioner's case, did not rely solely on the circumstances of the commitment offense; rather, the Board relied on other relevant considerations as well, such as the information contained in petitioner's psychological report and his prison disciplinary record. Moreover, while the circumstances of the commitment offense may, at some point, become irrelevant with respect to a parole suitability determination, they constitute, at present, some evidence to support the Board's decision.

prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). Additionally, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Id., § 2402(c)–(d).[4] One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." Id., § 2402(c). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id., § 2402(c)(1)(D) & (E). In addition to these factors, the Board is to consider "all relevant, reliable information available." Id., § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination. Id. at 1205–06.

Here, the Court cannot say the state court was unreasonable in concluding there is some evidence to support the Board's decision that petitioner would be a danger to society if released. As to the circumstances of the commitment offense, some evidence exists to support the Board's determination that the offense "was carried out in an especially vicious and insensitive manner,"

---

[4] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

1  and also in a manner that was "dispassionate and calculated." (Ans. Ex. 2 at 93.)  In particular,
2  the record shows that petitioner, while armed, entered the victim's residence and shot him in the
3  head, neck, and abdomen.  The record also shows that petitioner severely beat the victim.  Based
4  on this record of excessive, brutal, and apparently planned, violence, the Court finds some
5  evidence exists to support the Board's finding that the circumstances of the commitment offense
6  indicate petitioner remained unsuitable for parole in 2003.

In addition to the circumstances of the commitment offense, the Board's decision is supported by petitioner's record of prison behavior and the information contained in petitioner's psychological report.  While in prison, petitioner committed multiple disciplinary infractions, which support the Board's finding that petitioner has "failed to demonstrate evidence of positive change," thus requiring "a longer period of incarceration" and increased participation in self-help programs.  (Id. at 94, 98.)  Petitioner's 2002 psychological report also supports the Board's decision, in particular, the statement that petitioner's "violence potential is estimated to be somewhat higher than the average citizen in the community." (Id. at 95).   Notices in the record from the Los Angeles District Attorney and from the investigating police department support the Board's finding that law enforcement opposed petitioner's release on parole.

Based on this record, the Board's decision is supported by some evidence, and, accordingly, this claim will be denied.

### 3.  Alleged Race and Country of Origin Discrimination

Petitioner claims the Board conspired to create a fictitious regulation and use that regulation to discriminate against petitioner based on his race and country of origin, in violation of two international agreements and his rights to due process and equal protection.[5]  (Pet. at 27.) This Court addressed nearly identical claims in its decision dismissing petitioner's 2005 civil rights action.  See Avalos v. Nielsen, No. C 05-3830 MMC PR, 2006 WL 2924767 (N.D. Cal.

---

[5] See International Covenant on Civil and Political Rights art. 10.1, Dec. 9, 1966, 999 U.N.T.S. 171 (ratified June 8, 1992); International Convention on the Elimination of All Forms of Racial Discrimination art. 1et seq., Dec. 21, 1965, 660 U.N.T.S. 195 (ratified June 24, 1994); Inter-American Convention on Serving Criminal Sentences Abroad, Jan. 10, 1995, S. Treaty Doc. No. 104-35 (1995).

Sept. 29, 2006).  As before, petitioner's claims are unavailing.

### a. Due Process

By "fictitious regulation," petitioner refers to a statement allegedly made in 1998 by James Nielsen ("Nielsen"), who, petitioner alleges, was then chairman of the Board of Prison Terms, and who, according to petitioner, characterized the Board's implementation of foreign prison transfer programs as "not having any regulation to support it."  (Trav. at 4–5.)  Petitioner alleges the Board used such non-existent regulation to deny his transfer request based upon his race and country of origin.

A denial of petitioner's request for a transfer to a Mexican prison, pursuant to a treaty between the United States and Mexico, does not violate a liberty interest protected by due process, irrespective of the import of Nielsen's alleged comments.  A deprivation imposed on an inmate rises to the level of a violation of a liberty interest protected by the Due Process Clause where the state government officials' power to impose the deprivation is narrowly restricted, i.e., where the inmate has a kind of right to avoid it, and the deprivation is one of "real substance." See Sandin v. Conner, 515 U.S. 472, at 477–87 (1995).  A deprivation of "real substance" is a (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.  Here, there is no allegation or exhibit suggesting the denial of petitioner's transfer requests has resulted in his experiencing conditions any different from those experienced by other prisoners.  Consequently, the denial of petitioner's transfer has not caused "an atypical and significant hardship in relation to the ordinary incidents of prison life." See, e.g., Resnick v. Hayes, 213 F.3d 443, 447–48 (9th Cir.2000).  Further, there is no allegation or indication that the denials of transfer have had any effect on the duration of petitioner's sentence. Accordingly, the denial of petitioner's transfer requests does not amount to a deprivation of "real substance" within the meaning of Sandin, and his due process claim will be denied.

### b. Equal Protection

Petitioner also claims the Board is violating his rights under the Equal Protection Clause

because it grants transfers to European countries more readily than to Mexico. (Pet. at 28–29.) Petitioner argues such claimed differential treatment constitutes discrimination based on his national origin. (Id.)

Petitioner fails to state an equal protection claim, because he has not shown that those prisoners seeking transfers to Mexico are "similarly situated" to those prisoners seeking transfers to a European country. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (holding Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike"); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding equal protection claim requires groups "comprised of similarly situated persons"). Indeed, transfers of prisoners to Mexico are governed by a different treaty than transfers to European countries, each treaty containing its specific criteria and terms. Compare Inter-American Convention on Serving Criminal Sentences Abroad, S. Treaty Doc. No. 104-35 (1995), 1995 WL 905075 (Treaty) (governing transfers to Mexico) with Council of Europe: Convention on the Transfer of Sentenced Persons, 22 I.L.M. 530 (1983) (governing transfers to Europe). Accordingly, petitioner's equal protection claim will be denied.

## CONCLUSION

Because the record contains, at a minimum, some evidence to support the Board's finding that petitioner would present an unreasonable risk of danger to society if released, and because petitioner has made an insufficient showing as to his entitlement to relief on his other claims, the Court finds the state court's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor can the Court say it was based on an unreasonable determination of the facts.

Accordingly, petitioner's motion for an evidentiary hearing (Docket No. 12) is DENIED, and the petition for writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: January 22, 2009

MAXINE M. CHESNEY
United States District Judge